UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| TERESA KOUGIAS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 C 4481 |
| | ) | |
| ILLINOIS DEPARTMENT OF HUMAN SERVICES, DR. MICHAEL CWYNAR, and MARY ZUKOWSKI, individually | ) ) ) | Honorable Joan B. Gottschall |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Teresa Kougias filed this employment discrimination suit against the Illinois Department of Human Services ("IDHS"), Dr. Michael Cwynar, and Mary Zukowski, alleging that the defendants subjected her to a hostile work environment due to her sex, religion, and disability. The defendants have each moved for summary judgment, although the motions are directed to only some, and not all, of the claims. In addition, Zukowski has moved to strike Kougias' responses to Zukowski's statements of uncontested facts and additional facts for noncompliance with the local rules.

### **I. BACKGROUND**

The Chicago Read Mental Health Center is an Illinois state psychiatric hospital located in Chicago, Illinois. Kougias has worked for IDHS as a registered nurse since 1988, and worked as a Registered Nurse II on the "B South" unit of the Chicago Read Mental Health Center from September 1, 2001 until April 26, 2007. Zukowski was Kougias' Clinical Nurse Manager from September 1, 2001 until September 2006, when Zukowski was transferred to the "C North" unit

1

of the hospital.  After September 2006, Kougias worked with Zukowski only occasionally on weekends.  Kougias worked with Cwynar, a psychiatrist, from September 1, 2001 until January 11, 2007, when Cwynar was administratively reassigned away from the "B South" unit.

Kougias alleges that Cwynar made hostile remarks to her on a daily basis and that Zukowski responded by laughing.  Kougias alleges that Zukowski laughed when Cwynar told her, "You are messed up because of your beliefs, your fundamentalist Christian beliefs, you are screwed up because of your beliefs."  Kougias has only one eye.  According to Kougias, Zukowski laughed when Cwynar said to Kougias: "one-eyed people [are] undesirable, the government wanted to get rid of defective people, you have one eye, and you're fat."  Kougias further alleges that Cwynar shocked and frightened her when he called her a bitch and a lesbian.  Kougias also alleges that Cwynar told her, "Well maybe he (the patient) just needs a 'titty' to suck on."  According to Kougias, Cwynar also yelled at her.

Kougias alleges that, on January 9, 2007, Cwynar said, in front of the psychiatric team to which she was assigned, that Kougias was unfit to be a psychiatric nurse.  Later that day, Kougias met with Elaine Novak, then head of the hospital, Dr. Richard Malis, then medical director of the hospital, Rob Petkovski, Director of Nursing, and Valerie Smith, a clinical nurse manager, about Cwynar's behavior.  Before the day was out, Kougias gave Novak a letter complaining that Cwynar said – in response to Kougias' request that Mickey Bowlan, a therapist, speak with his patient about the patient's inappropriate behavior – "Why did you do that?  You shouldn't have to ask Mickey to talk to him!  That is your job!  If you have problems with that you should call your supervisor so she can tell you, you shouldn't be in psychiatry."  Kougias also met with her union steward, Janet Piansay, that day about her allegations of mistreatment.

According to Kougias, a few days after she complained in writing to Novak, Zukowski ordered Kougias to her office, then stood over Kougias in an intimidating manner and demanded to know what was going on respecting Kougias' complaint about Cwynar and "the B south situation." Kougias also alleges that, on January 14, 2007, Zukowski denied her overtime. Kougias alleges, and Zukowski disputes, that Zukowski was removed from "B South" as a result of a petition collectively signed by AFSCME union members.

## II.  LEGAL STANDARD

Rule 56 allows a movant to seek summary judgment when the opposing party's case consists of factually unsupported claims. *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Simply put, "summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (quotations omitted).

In order to survive a Rule 56 motion, the nonmoving party must either:  (a) show that the movant cannot produce admissible evidence that a fact is not disputed, (b) show that the materials cited by the movant do not establish the absence or presence of a genuinely disputed material fact, or (c) direct the court's attention to specific admissible evidence in "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that show that there is some genuinely disputed material fact. Fed. R. Civ. P. 56(c)(1); *see United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510-11

(7th Cir. 2010) ("[S]ummary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact." Also, it is "not the district court's job to sift through the record and make [a party's] case for him") (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). "The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive a summary judgment motion; there must be evidence on which the jury could reasonably find in favor of the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

In addition, "[D]istrict courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, both of which are the province of the jury." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (internal quotations and citations omitted); *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("As we have said many times, summary judgment cannot be used to resolve swearing contests between litigants.") Furthermore, at the summary judgment stage, "the court views the record in the light most favorable to the non-moving party, and draws all reasonable inferences in that party's favor." *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255, and *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 (7th Cir. 2009)).

### III. ANALYSIS

**A.  IDHS**

In her Counts II and III,[1] Kougias alleges that IDHS subjected her to a hostile work environmental based on her disability and gender in violation of the ADA and the Title VII. "Although [the Seventh Circuit] ha[s] not yet decided whether a claim for hostile work environment is cognizable under the ADA or the Rehabilitation Act, [the Seventh Circuit] ha[s] assumed the existence of such claims where resolution of the issue has not been necessary." *Mannie v. Potter*, 934 F.3d 977, 982 (7th Cir. 2005) (citing *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 712-13 (7th Cir.2000)); *see Conley*, 215 F.3d at 713 ("We have followed this course because the actions alleged in the cases before us have not been 'significant enough to rise to the level of a hostile environment were that type of claim available.'" (quoting *Vollmert v. Wis. Dep't of Transp.*, 197 F.3d 293, 297 (7th Cir. 1999)). "We have further assumed that the standards for proving such a claim would mirror those we have established for claims of hostile work environment under Title VII." *Id.* (citing *Silk v. City of Chi.*, 194 F.3d 788, 804 (7th Cir. 1999), and *Jeseritz v. Potter*, 282 F.3d 542, 547 (8th Cir. 2002)). "To demonstrate a hostile work environment under Title VII, [a plaintiff] must show that she was subjected to harassment because of her sex, that the harassment was severe or pervasive enough to create a hostile work environment, and that there is a basis for employer liability." *Sutherland v. Wal-Mart Stores, Inc.*, --- F.3d ----, No. 10-2214, 2011 WL 181487, at *3 (7th Cir. 2011) (citing *Erickson v. Wis. Dep't of Corr.*, 469 F.3d 600, 604 (7th Cir.2006)). Even assuming, however, that Kougias can show that she was subjected to harassment because of her sex and disability and that the harassment was severe enough to create a hostile work environment, IDHS argues that Kougias cannot show that there is a basis for employer liability.

---

[1] From what the court can tell from Kougias' somewhat vague complaint, IDHS is named as a defendant only in Counts II and III.

As the Seventh Circuit has explained:

> The standard for employer liability turns on whether the alleged harasser was the plaintiff's supervisor, instead of a mere co-worker. Harassment by a supervisor of the plaintiff triggers strict liability, subject to the possibility of an affirmative defense in the event the plaintiff suffered no tangible employment action. Conversely, an employer may be found liable for a hostile work environment created by an employee who was not the plaintiff's supervisor only where the plaintiff proves that the employer has been negligent either in discovering or remedying the harassment.

*Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 505-06 (7th Cir. 2004) (quotations and citations omitted). "A supervisor is someone with the power to *directly* affect the terms and conditions of the plaintiff's employment . . . , *i.e.*, the authority to hire, fire, promote, demote, discipline, or transfer [the plaintiff]." *Id.* at 506 (citing *Parkins v. Civil Constrs. of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998)). Indeed, "an employee merely having authority to oversee aspects of another employee's job performance does not qualify as a supervisor in the Title VII context." *Id.* (citing *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002)). The Seventh Circuit has held that a "plaintiff's harasser did not qualify as a supervisor despite the fact that he: (1) exercised authority to direct plaintiff's work operations; (2) provided input into her performance evaluations; and (3) was charged with training her and other less-experienced employees." *Id.* In addition, the Seventh Circuit has also held that the plaintiff's harassers did not qualify as her supervisors even where they "managed [her] work assignments, investigated complaints and disputes, and recommended sanctions for violations of workplace rules." *Id.* at 509 (Rovner, J., concurring) (summarizing the majority's opinion); *Compare Phelan v. Cook Cnty.*, 463 F.3d 773, 783-84 (7th Cir. 2006) (plaintiff's harasser qualified as her supervisor where he supervised *all* of the plaintiff's work, was directly responsible for her performance evaluations, had the authority to call for a disciplinary hearing, and appeared at least partially responsible for the selection of the hearing officer at a

disciplinary hearing he called, although he did not have final say as to whether the plaintiff was terminated.).

The IDHS argues that Cwynar was Kougias' co-worker for the purposes of Title VII. Kougias disagrees, arguing that Cwynar was her supervisor because he allegedly had the ability to direct Kougias' daily work activities. While it is true that the EEOC and other courts define "supervisor" more broadly for Title VII purposes, that definition is not the law of the Seventh Circuit. *See id.* (Rovner, J., concurring) (acknowledging that the EEOC "has indicated that an individual may qualify as a supervisor not only when he has the power to hire, fire, demote or reassign the plaintiff employee, but also when he 'has authority to direct the employee's daily work activities.'" (citing *EEOC Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors*, No. 915.002, §§ III.A & III.A.2 (June 18, 1999)). Kougias does not point to any evidence tending to show that Cwynar had the power to hire, fire, demote or reassign her, or otherwise directly affect the terms and conditions of her employment. Thus, Cwynar was not Kougias' supervisor for Title VII purposes.

Kougias further argues that, even assuming that the above authorities do not support her argument that Cwynar was her direct supervisor, a reasonable jury could find that Cwynar used Zukowski, Kougias' supervisor, as his "cat's paw." However, the "cat's paw" doctrine "applies only in those cases where no one individual possesses the powers of a Title VII supervisor (such as the hydra-headed supervisory committee [the Seventh Circuit] reviewed in *Phelan*)." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 849 (7th Cir. 2008). Kougias does not present any evidence that would make the "cat's paw" doctrine applicable here.

7

Since Cwynar was, under Seventh Circuit caselaw, Kougias' co-worker, Kougias needs to present evidence that IDHS "has been negligent either in discovering or remedying the harassment." Kougias fails to do so. Kougias concedes that she has received the IDHS Employee Handbook and has twice signed certifications that it is her obligation to read and understand it. The IDHS Employee Handbook provides, "It is IDHS policy that "any employee who observes or believes himself/herself to be the object of sexual harassment should address the incident(s) directly and firmly, by clearly communicating his/her position to the supervisor, the EEO/AA officer, and the offending employee." Nevertheless, Kougias admits that she never complained to Zukowski about the alleged harassment, and complained only to Cwynar once, but cannot remember the date on which she did so. IDHS and Kougias agree that in November 2006, Kougias complained about comments that Cwynar made, although Kougias did not mention any comments based on her disability or sex. Kougias admits that IDHS launched an investigation, but she called off the investigation and declined to pursue further action. Kougias further admits that she did not complain to IDHS again about the harassment until January 9, 2007, when she met with Novak, Malis, Smith, and Petkovski. Kougias concedes that the letter she submitted that day complains only of one comment based on sex.

"An employer's response to allegations of harassment 'must be reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made.'" *Longstreet v. Ill. Dep't of Corr.*, 276 F.3d 379, 382 (7th Cir. 2002). "What is a reasonable response depends on the gravity of the harassment." *Id.* It is undisputed that once Kougias complained in 2007, IDHS investigated and reassigned Cwynar so that Kougias never had to work with him again. This response was reasonable under the circumstances. *See Id.* at 381

("She cannot contend that removing Bester from Joliet . . . was not sufficient to remedy the harassment."). Given this, Kougias does not meet her burden of pointing the court to evidence that IDHS was negligent in either discovering or remedying the harassment. As a result, IDHS is entitled to summary judgment.

**B.     Zukowski**

In Count I of her complaint, the only count naming Zukowski, Kougias alleges that Zukowski violated § 1983 by retaliating against Kougias because Kougias exercised her rights under the First Amendment, the Americans with Disabilities Act ("ADA"), and other civil rights laws. Zukowski seeks summary judgment only on Kougias' claim of First Amendment retaliation.

Plaintiff offers evidence that within a few days after plaintiff made a discrimination and harassment complaint against Dr. Cwyner, Zukowski ordered plaintiff into her office and demanded to know what was going on with respect to plaintiff's complaints about Cwyner. Then, plaintiff was denied overtime by Zukowski. Plaintiff claims that her complaints about Cwyner, that he had harassed her, called her names and said she was unfit to be a psychiatric nurse, were protected by the First Amendment.

"A claim for First Amendment retaliation under § 1983 involves a three-step inquiry: (1) whether the employee's speech was constitutionally protected; (2) whether the protected speech was a but-for cause of the employer's action; and (3) whether the employee suffered a deprivation because of the employer's action." *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010). Zukowski argues that she is entitled to summary judgment because Kougias cannot prove any of these elements. Kougias disagrees, contending that she can prove all of these elements.

Regarding the first element, "the speech is protected only if it addressed a matter of public concern," which "depends upon the content, form, and context of [the speech] as revealed by the whole record." *Carreon v. Ill. Dep't of Human Servs.*, 395 F.3d 786, 791 (7th Cir. 2005) (citing *Sullivan v. Ramirez*, 360 F.3d 692, 698 (7th Cir. 2004) (quotation omitted)). "Of these considerations, content is the most important." *Id.* "The 'public concern' element must relate to a community concern and is not satisfied by 'merely a personal grievance of interest only to the employee.'" *Id.* "'At bottom, [the court] must decide whether the speech is most accurately characterized as an employee grievance, or as a matter of political, social, or other concern to the community.'" *Id.* (quoting *Cygan v. Wis. Dep't of Corr.*, 388 F.3d 1092, 1099 (7th Cir. 2004).

In *Carreon*, Evelyn Carreon, a nurse who worked in a mental health facility, alleged that the defendants retaliated against her because she complained that her employer planned to transfer her to the part of the facility slated to house the most violent patients. *Id.* at 791-92. Also in *Carreon*, Nasser Diab, another nurse, alleged that the defendants retaliated against him because he told a co-worker not to yell at a patient. The Seventh Circuit affirmed the district court's grant of summary judgment in the defendants' favor. *Id.* at 790. The Seventh Circuit reasoned that Carreon's "objection to the 1999 transfer raised a purely personal workplace grievance and is not protected speech." *Id.* at 792. The Seventh Circuit further reasoned that "Diab's . . . admonishment of a co-worker on one occasion not to yell at a patient address[ed] purely internal workplace grievances." *Id.* at 793.

Kougias contends that, given that, as Kougias alleges (and Zukowski disputes), Zukowski was removed from "B South" because of a petition collectively signed by AFSCME union members, it is clear that Kougias' complaints about Zukowski's alleged mistreatment were of concern to others

and, therefore, a matter of public concern. Kougias also points to her allegation that others complained about Zukowski's conduct at the meeting with Novak, Malis, Petkovski, and Smith as supportive of her argument that her complaints were a matter of public concern. However, Kougias' does not refer the court to a specific place in her statement of facts or the record that supports this assertion. *See 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d at 510 (It is "not the district court's job to sift through the record and make [a party's] case for him" (citation omitted)); *see also Dunkel*, 927 F.2d at 956 ("Judges are not like pigs, hunting for truffles buried in briefs."). The court will not credit unsupported assertions on a motion for summary judgment. *See Springer*, 518 F.3d at 484 ("[S]ummary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." (quotations omitted)).

In any event, Kougias' arguments are not persuasive. Like the claims at issue in *Carreon*, Kougias' claim that Zukowski retaliated against her because she complained of harassment by Dr. Cwynar involves nothing more than a personal grievance. The subject of Kougias' complaints to Novak, Malis, Petkovski, Smith, and Piansay was the way Cwynar and Zukowski treated *her* within the workplace. Kougias fails to direct the court's attention to evidence that shows that Kougias' complaints were even about the way Cwynar and/or Zukowski treated others, which in any event would probably not be sufficient. Kougias' complaint thus did not constitute "a matter of political, social, or other concern to the community." *Carreon*, 395 F.3d at 791. It is of no consequence that Zukowski may have been the subject of a union petition. A complaint does not become a matter of public concern simply because the public would be interested in the issue; rather, a complaint is a matter of public concern only if the purpose of the complaint is to raise issues of

11

public concern. *Houskins v. Sheahan*, 549 F.3d 480, 492 (7th Cir. 2008) (citing *Boyce v. Andrew*, 510 F.3d 1333, 1344 (11th Cir. 2007) ("The relevant inquiry is not whether the public would be interested in the topic of the speech at issue but rather is whether the purpose of the plaintiff's speech was to raise issues of public concern." (internal quotations and citation omitted.)) Indeed, "Speech that serves a private or personal interest, as opposed to a public one, does not satisfy the standards for First Amendment protections." *Id.* at 491-92.

Since Kougias' speech did not address a matter of public concern, it is not constitutionally protected speech, and Kougias cannot make a prima facie case for First Amendment retaliation. Accordingly, Zukowski's motion for summary judgment is granted as to Kougias' claim that Zukowski violated § 1983 by retaliating against Kougias because Kougias exercised her First Amendment rights. Kougias' claim that Zukowski violated § 1983 by retaliating against Kougias because Kougias exercised her rights under the ADA and other civil rights statutes is not challenged on summary judgment and hence survives.

In addition, Zukowski's motion to strike Kougias' responses to Zukowski's statements of uncontested facts and additional facts for noncompliance with the rules is denied as moot.

**C.    Cwynar**

For her Count I, Kougias alleges that Cwynar violated § 1983 by retaliating against Kougias because Kougias exercised her rights under the First Amendment, the Americans with Disabilities Act ("ADA"), and other civil rights laws. Cwynar argues that he is entitled to summary judgment on this claim because Kougias admits that she is not aware of any action by Cwynar in retaliation for her complaint about him. This court agrees. Accordingly, Cwynar's motion for summary judgment is granted as to Count I.

In Count IV, Kougias alleges that Cwynar defamed her by calling her a lesbian. At a deposition, Kougias testified that Cwynar called her a lesbian at a team meeting sometime in 2005 or 2006.[2] The statute of limitations for defamation actions in Illinois is one year. 735 Ill. Comp. Stat. 5/13-201 (West 2011) ("Actions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued.") Since Kougias cannot recall whether Cwynar called her a lesbian in 2006, Kougias cannot establish that she brought this action within a year of the alleged defamation. Under Illinois law, when a defendant raises a statute of limitations defense, the plaintiff must come forward with facts sufficient to show that the action was brought in a timely manner or that some exception to the statute's application applies. *Weger v. Shell Oil Co.*, 966 F.2d 216, 218 (7th Cir.1992). Since Kougias cannot do so here, this court must grant summary judgment as to Kougias' claim that Cwynar defamed her by calling her a lesbian.

Also in Count IV, Kougias alleges that Cwynar defamed her by "demean[ing her] in her work performance." Kougias argues that Cwynar's putative statement that Kougias was unfit to be a psychiatric nurse is defamatory *per se*. Cwynar appears to dispute whether he made this statement at all, noting that Kougias admits that she cannot remember exactly what words Cwynar uttered and pointing the court to Kougias' contemporaneous letter to Novak in which she wrote that Cwynar said,"Why did you do that? You shouldn't have to ask Mickey to talk to him! That is your job! If you have problems with that you should call your supervisor so she can tell you, you shouldn't be in psychiatry." Of course, "summary judgment cannot be used to resolve swearing contests between litigants." *Payne*, 337 F.3d at 770. Because Kougias has some evidence – her own testimony – that

---

[2] In her response brief, Kougias argues that Cwynar called her a lesbian up to an including January 2007. Kougias does not, however, refer the court to a specific place in her statement of facts or the record that supports this assertion. As noted before, the court cannot credit unsupported assertions at the summary judgment stage.

13

Cwynar said she was unfit to be a psychiatric nurse, the court will address Cwynar's arguments as to both of these statements.

A statement is defamatory *per se* if it fits into one of five categories outlined by the Illinois Supreme Court, *Maag v. Ill. Coal. for Jobs, Growth, and Prosperity*, 368 Ill. App. 3d 844, 849 (2006), "its harm is obvious and apparent on its face," *Kronenberg v. Baker & McKenzie LLP*, 692 F. Supp. 2d 994, 997 (N.D. Ill. 2010), and it "is not protected speech under the first amendment to the United States Constitution," *Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 518 (1998). "In Illinois, there are five categories of statements that are considered defamatory *per se*: (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication." *Green v. Rogers*, 234 Ill. 2d. 478, 491-92 (2009). In Illinois, a statement is not defamatory if it is an expression of opinion that "cannot reasonably be interpreted as stating actual facts about the plaintiff." *Skolnick v. Corr. Med. Serv., Inc.*, 132 F. Supp. 2d 1116, 1125 (N.D. Ill. 2001). Cwynar argues that the remark Kougias alleges he made – that she was unfit for psychiatry – is a statement of opinion that cannot reasonably be interpreted as stating actual facts about Kougias.

Illinois courts have given innocent construction to statements that a person is unfit for a certain occupation where such statements are nothing more than argumentative characterizations. In *Angelo v. Brenner*, 84 Ill. App. 3d 594 (1980), a psychiatrist "said in a raised voice, 'as a psychiatrist, Officer Angelo is unfit to be a policeman,'" after Officer Angelo gave his wife a ticket

14

and required her to travel to the police station to post a cash bond since she could not post her out-of-state driver's license for the traffic offense. *Id.* at 596. The psychiatrist made his comment to three other police officers. *Id.* The Illinois Appellate Court affirmed the trial court's grant of summary judgment.

The Illinois Appellate Court reasoned that, even assuming the case "present[ed] a triable issue on the question of actual malice" (since Officer Angelo was a public figure, he would have had to establish that the psychiatrist made his statement with actual malice before he could prevail), the psychiatrist's statement was still "not actionable as slander *per se*." *Id.* at 598. Indeed, "not every expression of opinion touching on a person's fitness to perform his job is slander *per se*." *Id.* "Each case of slander must be considered on its own facts and where possible words should be innocently construed so that they may be declared nonactionable as a matter of law." *Id.* The Illinois Appellate Court further reasoned that Officer Angelo's case was like *Stanley v. Taylor*, 4 Ill. App. 3d 98 (1972), in which a teacher criticized a principal's fitness for his job and the court noted that "the statements made were spoken in a rather hysterical manner and under circumstances which would make it apparent to the observer that what was said was nothing more than an irrational argumentative characterization not worthy of serious consideration." *Id.* at 599 (quoting *Taylor*, 4 Ill. App. 3d at 105). In addition, as in *Taylor*, this was "not a situation where defendant made a deliberate communication to someone other than plaintiff such as [someone with authority to fire or reprimand plaintiff] with the direct intention of doing injury to plaintiff in his position and profession." *Id.* Officer Angelo's situation was further similar to *Stanley*, where the statement was "spontaneous and made directly to plaintiff and was obviously more thoughtless than anything else."

*Id.* Thus, even though the psychiatrist used the word "unfit," the Illinois Appellate Court concluded that the remark could be innocently construed and was not actionable as slander *per se*.

Like the remarks at issue in *Angelo* and *Taylor*, the remarks of which Kougias complains are capable of innocent construction and are thus not defamatory *per se*. As in *Angelo* and *Taylor*, these remarks were made "under circumstances which would make it apparent to the observer that what was said was nothing more than an irrational argumentative characterization not worthy of serious consideration." *Taylor*, 4 Ill. App. 3d at 105. Nor is this a situation where Cwynar made a deliberate communication to someone with authority to fire or reprimand Kougias. Rather, as in *Taylor*, Cwynar allegedly made his remarks directly to Kougias. In addition, Cwynar persuasively argues that he was expressing his opinion about the duties of a psychiatric nurse and what should become of a nurse unwilling to fulfill those duties when he allegedly said "If you have problems [managing unruly patients] you should call your supervisor so she can tell you, you shouldn't be in psychiatry". Thus, even though Cwynar allegedly used the word "unfit" at one point, all of these remarks are capable of innocent construction and do not fit the definition of defamatory *per se*.

Given the foregoing, Cwynar is entitled to summary judgment on Count IV of Kougias' complaint.

## VI. CONCLUSION

The defendants' motions for summary judgment are granted. Zukowski's motion to strike is denied as moot. Kougias' claim in Count I that Zukowski violated § 1983 by retaliating against Kougias because Kougias exercised her rights under the ADA and other civil rights statutes is not

challenged on summary judgment and hence survives.

        ENTER:

        \_\_\_\_\_/s/_____
        JOAN B. GOTTSCHALL
        United States District Judge

DATED: March 16, 2011